UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENJAMIN CLAUDIO,

                Plaintiff,

v.                                              Case No. 20-cv-1168-pp

ADEBOLA IBIROGBA,

                Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 24), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30) AND DISMISSING CASE**

---

Plaintiff Benjamin Claudio, who is confined at Oakhill Correctional Institution, filed this case alleging that the defendant, Dr. Adebola Ibirogba, violated his constitutional rights. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim based on allegations that the defendant provided the plaintiff inadequate care for his finger injury. Dkt. No. 9. The defendant has filed a motion for summary judgment, dkt. no. 24, and the plaintiff also has moved for summary judgment, dkt. no. 30. The court will grant the defendant's motion, deny the plaintiff's motion and dismiss the case.

**I.    Facts[1]**

The plaintiff was confined at Prairie du Chien Correctional Institution between May 13, 2019 and May 12, 2021. Dkt. 26 at ¶1. The defendant is a

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

medical doctor licensed to practice in Wisconsin. Id. at ¶2. During 2019, the defendant worked as a part-time independent contractor at Wisconsin Department of Corrections ("DOC") prisons, including Prairie du Chien. Id. at ¶3. As an independent contractor, the defendant's duties included seeing patients and responding to forms, as requested by the DOC. Id. at ¶4.

On June 13, 2019, the Health Services Unit at Prairie du Chien received a health services request ("HSR") form from the plaintiff, stating that while "[a]t Dodge [Correctional Institution] [he] tore the muscles in [his] finger playing basketball," and that he was in pain and wanted to be seen by someone and have x-rays taken. Id. at ¶6. The next day, Nurse Allison Bahr saw the plaintiff. Id. at ¶7. The plaintiff told Bahr that he had hurt his finger playing basketball at another facility and had not been seen for the finger nor had it improved. Id. at ¶8. While the finger did not cause him any pain unless he tried to move it, the plaintiff could not move the finger into a bent position, and it was swollen with a slight discoloration in the joints. Id. Bahr applied a finger splint for stabilization, but the plaintiff refused pain medication. Id. at ¶9. Bahr referred the plaintiff to a provider for follow-up. Id.

On June 17, 2019, the defendant saw the plaintiff. Id. at ¶10. The plaintiff reiterated that he had hurt his finger at another facility playing sports and had not sought medical advice or treatment at the time of injury. Id. at ¶11. The plaintiff complained of mid phalanx pain, swollen deformity and

inability to flex at the "MIP joint."[2] Id. The defendant examined the plaintiff's finger and noted that it was swollen with diminished range of motion in flexion, but that there were no acute inflammatory changes. Id. at ¶12. At the same visit, the plaintiff complained of a back injury he had suffered three days prior during a basketball game, and that he was in painful distress from the back pain. Id. In response to the plaintiff's complaints, the defendant ordered an x-ray with 2+ views of the left index finger, noting the traumatic injury to the plaintiff's left index finger MIP that was untreated, with potentially subsequent stiffness and ankylosis of the finger.[3] Id. at ¶13. The defendant planned to review the x-ray findings for an active fracture, a poorly healed fracture or evidence of scar tissue, any of which would help inform the possible treatment options, including splinting, physical therapy or other treatment. Id. at ¶14. In the meantime, the defendant started the plaintiff on pain medications for his back and finger pain. Id. The defendant entered orders (1) referring the plaintiff for a routine follow-up appointment regarding the finger; (2) for x-rays of the left index finger, listing the reason as trauma to the mid-inter phalangeal joint and potential fracture and (3) for various pain medications. Id. at ¶15.

The plaintiff's x-rays were completed that same day. Id. at ¶16. Dr. James Collins reviewed the x-rays and concluded that although the plaintiff did

---

[2] MIP stands for the mid interphalangeal joint, which is the middle joint of a finger. Id. The acronym PIP, which means proximal interphalangeal joint, is used interchangeably with MIP to refer to the same joint. Id. "Phalanx" refers to a bone of the finger. Id. at ¶11.

[3] Ankylosis is the abnormal stiffening or immobility of a joint. Id. at ¶13.

3

not have a current fracture, the findings could not exclude a previous avulsion fracture[4] at the base of second middle phalanx on the left index finger, and he noted some soft tissue swelling. Id. Dr. Collins recommended to correlate the findings with the plaintiff's medical history and exam, and he suggested continued follow-up if the plaintiff's symptoms persisted. Id. at ¶17.

On July 9, 2019, the plaintiff had a routine follow-up appointment with the defendant regarding his back spasms and to review the x-ray findings from Dr. Collins. Id. at ¶20. The plaintiff's left index finger was still swollen with reduced range of motion, but he was not experiencing severe pain; the defendant informed the plaintiff that the x-ray could not exclude an old avulsion fracture and that he had some soft tissue swelling. Id. at ¶21. Based on the x-ray findings and examination, the defendant believed that the plaintiff's symptoms resulted from old trauma to the left index finger with a possible healed facture and associated ankylosis, as well as post-traumatic scarring secondary to lack of seeking medical care. Id. at ¶22. The defendant's treatment plan consisted of the plaintiff performing "do-it-yourself physical therapy with ball exercises with flexor and extensor" and then follow-up with a physician. Id. at ¶23. The defendant wanted to break down the plaintiff's scar tissue and improve joint mobility. Id. at ¶24. He expected that there would continue to be some pain with these exercises and he had the plaintiff perform

---

[4] An avulsion is a fractured or detached small chip of bone that may be embedded in its surroundings. Id. at ¶16.

them as do-it-yourself exercises so that the plaintiff could perform them at his own pace and to his own comfort thresholds. Id.

After the appointment, the defendant entered an order for the plaintiff to receive an exercise ball for ninety days. Id. at ¶25. The plaintiff subsequently submitted an undated information request, stating that the ball hurt his finger and that he believed he needed an MRI. Id. The defendant responded that the plaintiff was in a six to eight week physical therapy process to get the finger into a position of maximum function before they could re-evaluate the finger. Id. at ¶27.

Three days after his appointment with the defendant (on July 12, 2019), the plaintiff submitted a request for information regarding his finger and asking for an MRI. Id. at ¶28. Later that day, the plaintiff had an appointment with Nurse Jaime Salinas, during which he noted continued pain in his finger. Id. at ¶29. Salinas referred the plaintiff for a visit with a physician. Id.

In response to the referral order, the plaintiff saw the defendant on July 16, 2019 for a third appointment. Id. at ¶30. The defendant again reviewed the x-ray findings, which could not exclude an old avulsion fracture, with the plaintiff and noted the continued soft tissue swelling. Id. at ¶31. A physical exam of the finger showed middle interphalangeal swelling and mild tenderness, but also that the plaintiff's range of motion, while limited, had already improved with the exercises since the July 9, 2019 visit. Id. at ¶32. The plaintiff told the defendant that he tried using the exercise ball but found it a little difficult and asked for a soft item to use. Id. at ¶33. He also told the

5

defendant that he did not think the physical therapy would work so he did not follow through on the exercises. Id. at ¶34. The defendant included in his notes that the plaintiff had been less than compliant with exercise and medical advice regarding the treatment of his finger. Id. The defendant's professional assessment of the plaintiff's finger had not changed, and he determined that the plaintiff suffered from a possible healed avulsion fracture of his left index finger with some ankylosis. Id. at ¶35. The defendant recommended that the plaintiff continue conservative physical therapy to get the finger to a position of maximum function with a follow-up appointment in six to eight weeks. Id. at ¶36. Because the plaintiff found the exercise ball hard to use, the defendant recommended that he use socks or Therapuddy for the hand exercises; the defendant prescribed non-steroidal anti-inflammatory drugs and a splint to help alleviate any pain or swelling. Id. at ¶37. The defendant recommended that if the plaintiff's finger did not improve following the additional physical therapy, they could consider a referral to an orthopedic specialist. Id. at ¶38. The defendant wrote an order for the plaintiff to receive naproxen for thirty days. Id. at ¶39.

Six days after the appointment, the plaintiff submitted an interview/information request form, stating that he needed an MRI because he still could not bend the finger. Id. at ¶40. The plaintiff thought he had ligament damage and believed he needed an MRI to be sure he didn't suffer more damage. Id. The Health Services Manager spoke with the defendant on July 29, 2019, and the defendant informed her that the plaintiff's condition did not

warrant an MRI, that the plaintiff was performing hand exercises to strengthen his finger and that if the finger had not improved at the next follow-up appointment, the defendant would consider ordering physical therapy with a therapist or a referral to an orthopedic specialist. Id. at ¶41.

The plaintiff transferred from Prairie du Chien to county jails for court hearings between August 1 and August 22, 2019, and again from August 30 to September 4, 2019. Id. at ¶44. The defendant entered orders for the plaintiff to refill his pain medications on August 2, 2019 and September 4, 2019. Id. at ¶45.

On September 25, 2019, the plaintiff had a follow-up appointment with the defendant regarding his left index finger. Id. at ¶46. The defendant's examination showed that there was a contracture at the mid interphalangeal joint with limited flexion and the plaintiff's range of motion had improved with the range of motion exercises. Id. at ¶47. The examination also showed a palpable hard notch in the mid-phalanx bone. Id. The defendant assessed the plaintiff's finger as a healed fracture with flexion deformity and found that it had improved with the range of motion exercises. Id. at ¶48. He recommended that the plaintiff continue the exercises to improve range of motion and strengthen the finger until it reached a position of maximum function. Id. at ¶49. The defendant included a referral to primary care for a follow-up visit in six months and an order to take Tylenol as needed for pain. Id. at ¶50.

On October 14, 2019, the health services unit received an HSR from the plaintiff, asking to go to a hand specialist to see how to get his finger to

7

function properly. Id. at ¶51. Three days later, the defendant reviewed the HSR and recommended that the plaintiff be sent out for an evaluation by an orthopedic surgeon. Id. at ¶52. The defendant believed that although no acute emergency or critical reason existed to send the plaintiff to an outside specialist, circumstances warranted getting a second opinion to make sure they did not miss anything regarding the plaintiff's treatment and diagnosis. Id. at ¶53. The next day, the defendant wrote an order referring the plaintiff to Dr. Kevin Rumball, an orthopedic specialist at Gunderson Orthopedic Surgery. Id. at ¶54. The defendant described the relevant symptoms as a left-index finger deformity at mid-phalanx due to an untreated avulsion fracture and non-union/malunion with persistent pain and limitation of function. Id. The defendant asked Dr. Rumball to evaluate the finger for determination and recommendation for management. Id.

After the scheduling process began for the plaintiff's appointment, he submitted two HSR forms regarding the appointment and his finger, and the defendant emailed him in response. Id. at ¶56. The defendant informed the plaintiff that there was a waiting time for the appointment with Dr. Rumball, and that the treatment plan would depend on Rumball's findings and expert opinion. Id. at ¶57. In response to a question from the plaintiff about needing to break the finger, the defendant responded that the orthopedic specialist would determine if his finger needed to be broken and reset for cosmetic and functional corrections. Id.

The defendant's final day working for the DOC was December 21, 2019. Id. at ¶58.

On January 15, 2020, the plaintiff had his appointment with Dr. Rumball. Id. at ¶60. The plaintiff reported that he had injured his hand playing basketball about nine months prior, and that when the injury occurred, he finished playing the game, but noted increasing pain and swelling of the left index finger afterward and the next day. Id. at ¶61. The plaintiff felt that it took some time to get an x-ray and that an MRI should have been ordered. Id. at ¶62. He mainly complained of stiffness and loss of strength. Id.

Dr. Rumball repeatedly tested the mobility of the plaintiff's finger and it gradually improved to the point that he obtained almost ninety degrees of flexion. Id. at ¶63. Dr. Rumball determined that updated x-rays showed no significant difference between the joints on the plaintiff's left and right hands. Id. at ¶64. He opined that the plaintiff was "in a post-sprain status of the left-index finger with residual stiffness of joint and loss of strength in the hand." Id. at ¶65. Dr. Rumball's treatment plan included discussing with the plaintiff treatment strategies for improving stiffness and loss of strength in the hand. Id. at ¶66. He provided the plaintiff with putty and recommended that he continue range of motion activities using putty. Id. Dr. Rumball did not order an MRI for the plaintiff. Id. at ¶67. His recommended treatment plan was the same plan recommended by the defendant. Id. at ¶68.

Following his appointment with Dr. Rumball, the plaintiff requested additional Therapuddy to perform his hand exercises. Id. at ¶69. He has not

submitted any additional health service requests or information requests regarding pain or stiffness in his finger. Id. at ¶70.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The defendant contends that the plaintiff cannot present evidence showing that the defendant acted with deliberate indifference to the plaintiff's medical needs. Dkt. No. 25 at 14-17. He also contends that there is no evidence that delays in treatment—if any—caused the plaintiff harm. Id. at 17-20.

The plaintiff's motion for summary judgment consists of a one-page letter in which he requests summary judgment, although he does not support his request with facts or argument. Dkt. No. 30. The plaintiff filed a separate response to the defendant's motion for summary judgment in which he contends that the court should deny the defendant's motion. Dkt. No. 32. According to the plaintiff, he repeatedly complained about his painful finger. Id. at 1. The plaintiff faults the defendant because he did not "buddy tape" the plaintiff's finger when he first saw the plaintiff. Id. The plaintiff also states that he requested a splint, which did not fit because his fingers were too swollen. Id. The plaintiff states that it took "them" over eight months to send him to a specialist and that his hand healed wrongly because of the delay. Id. at 2. He states that "seeing [him] in pain and seeing [his] finger swollen and deformed for months and not seek[ing] a second opinion until 9 months later is neglect." Id. The plaintiff cites to the defendant's proposed facts, and he also states that

he disagrees with all the proposed facts because "they are not facts, they are not true." Id.

"The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care.'" Lewis v. McLean, 864 F.3d 556, 562 (7th Cir. 2017) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A deliberate indifference claim contains both an objective and a subjective component. "[A] prisoner must first establish that his medical condition is 'objectively, sufficiently serious,' and second, that prison officials acted with a 'sufficiently culpable state of mind'—i.e., that they both knew of and disregarded an excessive risk to inmate health." Id. at 562-63 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

"Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Cesal v. Moats, 851 F.3d 714, 721 (7th Cir. 2017) (quoting Estelle, 429 U.S. at 104-105). The defendant has not argued that the plaintiff's finger condition was not an objectively serious medical need, and the court finds that it was. See id. The only question for summary judgment is whether a reasonable fact finder could conclude that the defendant's treatment of the plaintiff amounted to deliberate indifference.

12

"To determine if a prison official acted with deliberate indifference, [courts] look into his or her subjective state of mind." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)). "[S]howing negligence is not enough." Id. (citing Estelle, 429 U.S. at 106). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." Id. (citing Farmer, 511 U.S. at 836-38). "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." Id. (citing Farmer, 511 U.S. at 837).

The plaintiff argues that the defendant should have ordered an MRI, should have buddy-taped his fingers and should not have waited so long to refer him to a specialist. In other words, the plaintiff disagrees with the defendant's medical judgment. A mere disagreement with medical judgment does not amount to deliberate indifference. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) (citing Estelle, 429 U.S. at 106).

The defendant did not disregard the plaintiff's condition, nor did he delay treating the plaintiff. The record shows that the defendant used his professional judgment to monitor and manage the stiffness and pain in the plaintiff's finger. The defendant prescribed exercises and medications for the plaintiff that had their intended effect, and the defendant subsequently referred the plaintiff to an outside specialist for a second opinion. The record contains no evidence that the defendant persisted in an ineffective course of treatment or that his decisions amounted to a substantial departure from accepted

13

medical judgment. The defendant gave reasons for following the course of treatment prescribed to the plaintiff. Notably, the outside specialist who evaluated the plaintiff for the second opinion prescribed the same course of treatment as had the defendant, and like the defendant, he did not order an MRI despite the plaintiff's requests. Even if there was evidence that the defendant was negligent, or committed malpractice, in not ordering an MRI for the plaintiff or in not referring him to a specialist sooner, "[d]eliberate indifference is not medical malpractice . . . ." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008).

The plaintiff's finger injury occurred over a month before his first appointment with the defendant. The record shows that defendant exercised his medical judgment in evaluating the plaintiff's medical complaints and he attempted multiple treatments to address the injury. The defendant referred the plaintiff to a specialist, not because an emergency or critical reason existed to send him to an outside specialist, but because he wanted to get a second opinion to make sure treatment providers at Prairie du Chien did not miss anything regarding the plaintiff's treatment and diagnosis. The plaintiff has not shown that the alleged delay in referring him to a specialist exacerbated his injury or unnecessarily caused pain. See Petties, 836 F.3d at 730-31. And, as noted, the specialist who evaluated the plaintiff prescribed the same course of treatment as the defendant. Again, the defendant did not delay in treating the plaintiff; he promptly responded to the plaintiff's medical concerns. "[T]he Eighth Amendment does not reach disputes concerning the exercise of a

14

professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." Cesal, 851 F.3d at 721 (citing Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996)). The defendant's responsive care to the plaintiff's medical need does not support a constitutional claim. Johnson v. Dominguez, 5 F.4th 818, 824-26 (7th Cir. 2021).

### III. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 24.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. no. 30.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry

of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 18th day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

16

Case 2:20-cv-01168-PP   Filed 05/18/22   Page 16 of 16   Document 38